UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
ANGELA THIGPEN,

                Plaintiff,

        - against -

BOARD OF TRUSTEES OF THE LOCAL 807
LABOR-MANAGEMENT PENSION FUND,

                Defendant.
------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-162 (PKC) (LB)

PAMELA K. CHEN, United States District Judge:

Plaintiff Angela Thigpen, proceeding *pro se*,[1] brings this action against Defendant Board of Trustees of the Local 807 Labor Management Pension Fund ("Defendant" or the "Pension Fund"), seeking various benefits she claims are owed to her as the daughter of deceased Pension Fund participant Jesse L. Thigpen (the "Decedent"). Defendant moves for summary judgment as well as an award of attorneys' fees. For the following reasons, the Court grants Defendant's motion for summary judgment on liability and grants Defendant's request for attorneys' fees, but only in the amount of $100.

## BACKGROUND

### I. Plaintiff's 56.1 Statement

Plaintiff has not submitted a 56.1 statement as required by Local Rule 56.1, and remarks in her brief could thus be interpreted as conceding the truth of the facts averred in Defendant's 56.1 Statement. (*See* Plaintiff's Opposition Brief ("Pl.'s Br."), Dkt. 56, at 2 ("The Plaintiff will

---

[1] Because Plaintiff is *pro se*, the Court liberally construes her submissions and interprets them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation and emphasis omitted). However, the Court notes that it "need not act as an advocate for" Plaintiff. *Curry v. Kerik*, 163 F. Supp. 2d 232, 235 (S.D.N.Y. 2001) (quoting *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998)).

1

respectfully agree to the contentions and details set forth in the Pension Funds['] Local Rule 56.1, however, there are questions as to the truthfulness of the Statement of Material Facts and the Affidavits on the record herein which must be fully realized.").) Nevertheless, the Court declines to deem Defendant's 56.1 Statement admitted solely on that basis. As the Second Circuit has advised:

> A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules. Thus, we have previously indicated, and now hold, that while a court is not required to consider what the parties fail to point out in their Local 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement.

*Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and quotations omitted); *see also Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004) ("Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law."). Although Plaintiff failed to comply with Local Rule 56.1(b), in opposing Defendant's motion she did provide her own factual account of the case and attached numerous, non-duplicative exhibits. (*See generally* Pl.'s Br., Dkt. 56; Plaintiff's Exhibits, Dkt. 56-1.) Given Plaintiff's *pro se* status, the Court will "examine the record to determine whether there are any triable issues of material fact, notwithstanding the fact that [Plaintiff] did not follow Local Civil Rule 56.1." *Cain v. Esthetique*, 182 F. Supp. 3d 54, 63 (S.D.N.Y. 2016).

However, the Court will deem facts averred in Defendant's 56.1 Statement to which Plaintiff cites no admissible evidence in rebuttal as undisputed. *See Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 28, 2012) ("Eastern District Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit

2

or affidavit does not specifically controvert anything."). Therefore, to the extent Plaintiff's recitation of facts in her brief "improperly interjects arguments and/or immaterial facts in response to facts asserted by Defendant without specifically controverting those facts," the Court has disregarded Plaintiff's factual recitation. *Risco v. McHugh*, 868 F. Supp. 2d 75, 87 n.2 (S.D.N.Y. 2012).

## II. Facts[2]

Defendant provides pension and death benefits to members of Local 807 of the International Brotherhood of Teamsters (the "Union"), whose employers contribute to the Pension Fund under written agreements between the employers and the Union or the International Brotherhood of Teamsters. (Defendant's 56.1 ("Def.'s 56.1"), Dkt. 54, at ¶ 1.) Union members may also participate in the Local 807 Labor-Management Health Fund or Profit-Sharing Fund if their employers contribute to those funds under written agreements with the Union or the International Brotherhood of Teamsters. (*Id.* ¶ 2.) The Pension Fund, Health Fund, and Profit-Sharing Fund are each separate multiemployer employee benefit funds as defined and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). (*Id.* ¶ 3.)

Plaintiff is the daughter of the Decedent, a former participant in the Pension Fund. (*Id.* ¶ 4.) The Decedent participated in the Pension Fund throughout his employment with Independent Chemical Corporation ("Independent Chemical"), which contributed to the Pension Fund as a signatory to the "National Master Freight Agreements" (the "Agreements") entered into with a negotiating committee for the International Brotherhood of Teamsters. (*Id.* ¶ 5.) Specifically, the

---

[2] Unless otherwise noted, a standalone citation to Defendant's 56.1 Statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citation to Defendant's 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to the underlying document.

3

Decedent actively participated in the Pension Fund from 1983 to September 2002, and from October 2002 through his death in 2014 as a retired participant. (*Id.* ¶ 6.) Between 1983 and 2002—the years the Decedent worked at Independent Chemical—Independent Chemical contributed to the Health Fund for eligible employees, including the Decedent, in accordance with the Agreements. (*Id.* ¶ 7.) Accordingly, the Decedent received medical, hospital, prescription drug, and dental coverage from the Health Fund until he retired from active employment in 2002. (*Id.* ¶ 8.) Pursuant to the Pension Fund's status as a "defined benefit" pension fund,[3] the Decedent earned and received a pension in the amount of $2,011.50 per month from the Pension Fund when he retired in September 2002. (*Id.* ¶¶ 15, 16.)[4]

Because the Decedent represented that he was not married at the time he retired, his pension was paid in the form of a "single life annuity" with a 60-month guarantee. (*Id.* ¶ 17.)[5] The 60-month guarantee provided that, if the Decedent died before receiving 60 months of pension

---

[3] In a defined benefit pension fund, a participant's benefit is calculated under a specific formula based on his length of service and is then paid out of general pension fund assets. (*Id.* ¶ 16.)

[4] Health Fund coverage ceases upon a participant's retirement. (*Id.* ¶ 9.) Once a participant retires, the Health Fund provides no further benefits other than a $2,500 post-retirement death benefit that is paid upon the participant's death. (*Id.* ¶ 10.) The Pension Fund also provides a $1,000 death benefit which is aggregated with the Health Fund's benefit towards the participant's funeral expenses. (*Id.*) However, during the period the Decedent worked for Independent Chemical, Independent Chemical did not contribute to the Profit-Sharing Fund for any of its employees, including the Decedent, and was not required to do so. (*Id.* ¶¶ 11–12.) Because Independent Chemical did not contribute to the Profit-Sharing Fund for the Decedent, the Decedent did not participate in the Profit-Sharing Fund and was not entitled to any benefits from the Profit-Sharing Fund. (*Id.* ¶ 13.)

[5] Payment in the form of a single life annuity means that the amount of the Decedent's monthly pension benefit was actuarially calculated for the period of his life only (as opposed to a joint and survivor annuity for married retirees, which would be calculated based on the life expectancies of both the retiree and the spouse). (*Id.*)

benefits, additional monthly payments through the sixtieth month after his pension began would be paid to a designated beneficiary. (*Id.* ¶ 18.) The Decedent named Leon B. Thigpen and Richard Thigpen as the primary beneficiaries under the 60-month guarantee in his December 2002 application for pension benefits. (*Id.* ¶ 19.) In November 2003, the Decedent executed a new beneficiary designation under the 60-month guarantee naming Jackleen Grant Thigpen as the primary beneficiary and Leon B. Thigpen as the secondary beneficiary. (*Id.* ¶ 20.) The Decedent died on May 6, 2014—more than 60 months after he began receiving pension benefits. (*Id.* ¶ 21.) Since the Decedent received pension benefits for more than 60 months before his death, no benefits under the 60-month guarantee were payable to his designated beneficiaries after his death. (*Id.* ¶ 22.) The only benefits provided by the Pension Fund—and the only benefits to which the Decedent was entitled from the Pension Fund—were the $2,011.50 monthly pension benefit that he received from 2002 through 2014 and the $1,000 post-retirement death benefit. (*Id.* ¶ 25.)[6]

The Decedent named Plaintiff as the beneficiary of $3,500 in post-retirement death benefits on a form used strictly for designating the beneficiary of this benefit by the participant. (*Id.* ¶ 26.) The post-retirement death benefit was the only benefit for which the Decedent designated Plaintiff as the beneficiary. (*Id.* ¶ 27.) By letter dated May 7, 2014, Margo Guarino—an employee of the Pension Fund—asked Plaintiff to submit a copy of the Decedent's funeral bill, showing who paid for the funeral. (*Id.* ¶ 28.) Ms. Guarino added that, if the bill was not yet fully paid, Plaintiff could submit an "assignment of proceeds" for the $3,500 post-retirement death benefit made payable to

---

[6] In 2014, the Pension Fund provided post-retirement death benefits in the amount of $1,000 to its participants, including the Decedent. (*Id.* ¶ 23.) The post-retirement death benefits paid by the Pension Fund were to be aggregated with $2,500 in post-retirement death benefit paid by the Health Fund. (*Id.* ¶ 24.) The death benefits were payable to a funeral home toward burial expenses or to a third party who paid for burial expenses. (*Id.* ¶ 24.) If there was no claim for burial expenses, the benefits were payable to the participant's designated beneficiary. (*Id.*)

the funeral home. (*Id.*) Plaintiff executed an assignment form before a notary public on May 14, 2018 that directed the Pension Fund and the Health Fund to pay the $3,500 in post-retirement death benefits to the House of Hills Funeral Home. (*Id.* ¶ 29.) The Pension Fund and the Health Fund paid the post-retirement death benefits to the House of Hills Funeral Home based on the assignment of benefits form signed by Plaintiff. (*Id.* ¶ 30.) Thereafter, the Pension Fund informed Plaintiff and her representative that no additional benefits were payable from the Pension Fund. (*Id.* ¶ 31.)

### III. Procedural History

Plaintiff commenced this action in state court on or about December 7, 2017. (*See* Notice of Removal, Dkt. 1, ¶ 5 & ECF[7] 6–10.)[8] The complaint recited a cause of action for negligence and sought all benefits due to Plaintiff, as well as plan documents and documentation on "reporting and disclosure, participation, vesting, funding, and so on." (*Id.* ¶ 5 & ECF 8–9.)[9] On January 10, 2018, Defendant removed the action to federal court on the basis of federal question jurisdiction. (*See id.* ¶ 9 ("Under Section 502(a) of ERISA, district courts of the United States have original jurisdiction over claims arising under Title I, Section 502(a)(1)(B) of ERISA. The Complaint seeks benefits from the Fund, an ERISA employee benefit plan, based on Plaintiff's status as a beneficiary of the Fund.").) After discovery concluded, the Court granted Defendant leave to file

---

[7] "ECF" refers to the "Page ID" number generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[8] Though Plaintiff originally named Carol Westfall as a defendant (*id.* ¶ 5 & ECF 6), Ms. Westfall was dismissed from the case on March 6, 2018 (*see* Mar. 6, 2019 ECF Entry).

[9] At her deposition Plaintiff indicated that she seeks reimbursement from the Pension Fund for: (1) approximately $2,000 in funeral expenses that exceeded the amount of the Decedent's post-retirement death benefits; (2) lost wages for days she went to court, worked on her lawsuit, and missed work for her father's funeral; and (3) trauma and emotional stress that she suffered due to the Decedent's death. (Def.'s 56.1, ¶ 76.)

a motion for summary judgment (*see* Nov. 20, 2018 ECF Entry), which is currently pending before this Court (Dkt. 50).[10]

## STANDARD OF REVIEW

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, however, the burden shifts to the non-moving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the non-moving party is "insufficient"; "there must be evidence on which the jury could reasonably find for the non-movant." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (brackets and quotation omitted). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quotation and emphasis omitted).

---

[10] On December 27, 2018, Defendant served Plaintiff with a "Notice To Pro Se Litigant Who Opposes a Motion For Summary Judgment" pursuant to Local Rule 56.2. (*Id.* at ECF 246.)

7

When assessing whether a genuine issue of fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48.

## DISCUSSION

### I. Liability

"ERISA permits a person entitled to benefits to enforce that entitlement in a civil action." *Dickerson v. United Way of N.Y.C.*, 351 F. App'x 506, 507 (2d Cir. 2009) (summary order) (citing 29 U.S.C. § 1132(a)(1)(B)). To prevail on such a claim, a plaintiff must prove that "(1) the plan is covered by ERISA, (2) [she] is a participant or beneficiary of the plan, and (3) [she] was wrongfully denied" a benefit to which she was owed under the plan. *Giordano v. Thomson*, 564 F.3d 163, 168 (2d Cir. 2009) (citations omitted); *see Juliano v. Health Maint. Org. of N.J., Inc.*, 221 F.3d 279, 287–88 (2d Cir. 2000) (noting that a plaintiff in an ERISA action must prove her case by "establish[ing] that [she] [was] entitled to [the] benefit [she seeks] pursuant to the terms of the [c]ontract or applicable federal law"). In this case, only the second and third requirements are in dispute. Defendant argues that the Pension Fund is entitled to summary judgment because the undisputed facts show that Plaintiff has received full payment of the only benefit to which she is entitled. (Defendant's Opening Brief ("Def.'s Br."), Dkt. 51, at ECF 269.)

As explained, *supra*, the record before the Court on summary judgment substantiates this argument. More specifically, the evidence in the record indicates that (1) the Decedent named

Plaintiff as the beneficiary of $3,500 in post-retirement death benefits (Def.'s 56.1, ¶ 26); (2) this post-retirement death benefit was the only benefit for which the Decedent designated Plaintiff as a beneficiary (*id.* ¶ 27); and (3) Plaintiff, in fact, received the $3,500 post-retirement death benefit, which she assigned to the House of Hills Funeral Home as partial payment for her father's funeral expenses (*id.* ¶¶ 28–30). Accordingly, because Defendant has "demonstrate[d] that there are no genuine issues of material fact," the burden shifts to Plaintiff to "come forth with evidence sufficient to allow a reasonable jury to find in [her] favor." *Spinelli*, 579 F.3d at 166 (quotation omitted).

In opposition to Defendant's summary judgment motion, Plaintiff argues that (1) she may be entitled to additional benefits through the Pension Benefit Guarantee Corp. ("PBGC") because the beneficiary card on which the Decedent named Plaintiff as the beneficiary of his death benefit "lists Local 707" and the PBGC has a Form 707 through which a pensioner can designate a beneficiary; (2) the absence of a plan name on the beneficiary card may indicate that Plaintiff was entitled to benefits beyond the $3,500 post-retirement death benefit that she received; (3) the 1099-R Forms issued by the Pension Fund show distributions that Plaintiff should have, but did not, receive, and/or indicate the existence of other pension plans under which Plaintiff was entitled to benefits; (4) the Pension Fund's Form 5500 Schedule MB for 2010 indicates the existence of other multiemployer defined benefit plans and money purchase plans under which Plaintiff may be entitled to benefits; and (5) communications between Plaintiff and Optum Bank about the Decedent's Health Savings Account prove she is entitled to more benefits than she received. (Pl.'s Br., Dkt. 56, at ECF 821–23.)

At the outset, the Court rejects Plaintiff's first, second, and fourth arguments, as they ask the Court to speculate as to evidence that could exist somewhere, but is not currently in the record.

9

*See Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) ("While it is true that a court is required to resolve all ambiguities and draw all factual inferences in favor of the nonmovant, a plaintiff may not survive summary judgment merely by conjuring a hypothetical issue of material fact." (quotation and citation omitted)); *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("To defeat summary judgment, . . . nonmoving parties must do more than simply show that there is some metaphysical doubt as to the material facts, and they may not rely on conclusory allegations or unsubstantiated speculation." (quotations and citation omitted)); *Christie's Inc. v. Davis*, 247 F. Supp. 2d 414, 422 (S.D.N.Y. 2002) (noting that "'mere conjecture [and] speculation,' . . . does not provide a basis to deny summary judgment" (quoting *Argus Inc. v. Eastman Kodak Co.*, 801 F.3d 38, 42 (2d Cir. 1986) (first alteration in original))); *Local Unions 20 v. United Bhd. of Carpenters & Joiners of Am.*, 223 F. Supp. 2d 491, 507 (S.D.N.Y. 2002) ("declin[ing], in the absence of any evidence, to speculate on what 'the evidence would show' if offered"); *Jimenez v. City of New York*, 605 F. Supp. 2d 485, 522 (S.D.N.Y. 2009) ("Plaintiff submits no evidence to support [her] supposition; [she] merely speculates . . . . That is not sufficient to bar summary judgment [].").

The Court accordingly only addresses Plaintiff's third and fifth arguments.

### A. 1099-R Forms

Plaintiff argues that the 1099-R Forms issued by the Pension Fund show distributions that Plaintiff should have, but did not, receive, and/or indicate the existence of other pension plans under which Plaintiff was entitled to benefits. (Pl.'s Br., Dkt. 56, at ECF 821–22.) But the referenced Forms do not indicate anything of the sort. Rather, the 1099-R Forms reflect pension payments made by the Pension Fund to the Decedent, who is identified on the forms as the "recipient." (*See* Tax Forms, Dkt. 56-1, at ECF 837–46.) The forms set forth the gross amounts

of pension benefits paid to the Decedent for the years in which they were issued. (Supplemental Affidavit of Teresa Casanova ("Casanova Supp. Aff."), Dkt 57-1, ¶ 6.)[11] To the extent any pension benefits might have been payable after the Decedent's death, Plaintiff was not the named beneficiary of those benefits. (*Id.* ¶ 7; Casanova First Aff., Dkt. 52, ¶¶ 19, 20.) Because the 1099-R Forms relate only to pension benefits to which Plaintiff had no claim, they do not prove Plaintiff's entitlement to additional benefits from the Pension Fund. *Cf. Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004) ("An alleged factual dispute regarding immaterial or minor facts between the parties will not defeat an otherwise properly supported motion for summary judgment.").

### B. Optum Bank

Plaintiff argues that communications between Optum Bank and Plaintiff about the Decedent's Health Savings Account shows that she is entitled to more benefits from the Pension Fund than she received. (Pl.'s Br., Dkt. 56, at ECF 823.) More specifically, Plaintiff states,

> it should be further noted that in the latter part of 2018, the Plaintiff established phone and written communication with OPTUM Bank Representative(s) in Salt Lake City, UT. The Plaintiff upon making further written and verbal communication received a correspondence to the effect of expressing condolences

---

[11] Although Defendant submitted the supplemental affidavit of Teresa Casanova—the Fund Manager for the Pension Fund (First Affidavit of Teresa Casanova ("Casanova First Aff."), Dkt. 52, ¶ 1)—for the first time in reply, this affidavit "merely responds to matters placed in issue by" Plaintiff in her opposition brief, and therefore "does not spring upon [Plaintiff] new reasons for the entry of summary judgment." *Kelly v. Times/Review Newspapers Corp.*, No. 14-CV-2995 (JMA) (SIL), 2018 WL 1701999, at *8 (E.D.N.Y. Feb. 15, 2018), *report and recommendation adopted*, 2018 WL 1701945 (E.D.N.Y. Mar. 31, 2018). The Court therefore exercises its discretion to consider the affidavit. *See Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226–27 (2d Cir. 2000) ("[R]eply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party." (citation omitted)); *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 80 n.6 (E.D.N.Y. 2019) (exercising discretion to consider affidavit submitted in reply that merely responded to the identification of alleged deficiencies in the moving party's evidence); *Lopez v. Hollisco Owners' Corp.*, 147 F. Supp. 3d 71, 79 (E.D.N.Y. 2015) (exercising discretion to consider reply declaration that was responsive to opposition).

> for the loss of her father who[] is the Participant and was directed to provide the necessary documentation such as a *certified copy of the death certificate*, etc. in order to expedite the distribution of additional benefit funds, which goes to the contrary of the Defendants' Attorneys['] argument that the Plaintiff was only entitled to a Single Life Annuity.

(*Id.* (emphasis in original).) However, Plaintiff has not submitted any evidence indicating that the Health Savings Account was associated with the Pension Fund (*see* Optum Bank Documents, Dkt. 56-1, at ECF 919–20), and the Pension Fund has indicated that it does not offer any Health Savings Accounts (Casanova Supp. Aff., Dkt. 57-1, ¶ 11). Plainly, the existence of benefits offered through other entities does not prove that Defendant owes any additional benefits to Plaintiff. *Cf. Powell*, 364 F.3d at 84.

\* \* \*

Accordingly, because no reasonable jury could find that Plaintiff is entitled to any benefits from Defendant Pension Fund beyond the benefit she has already received, the Court grants summary judgment to Defendant.

## II. Attorneys' Fees

Defendant additionally asks this Court to award it $500 towards the attorneys' fees and costs incurred due to Plaintiff's frivolous actions during these proceedings. (Def.'s Br., Dkt. 51, at ECF 271–73.) For the below reasons, the Court grants Defendant's request, but reduces the attorneys' fees award to $100.

### A. Relevant Facts

As described, *supra*, Plaintiff commenced this action in state court on or about December 7, 2017. (*See* Notice of Removal, Dkt. 1, ¶ 5 & ECF 6–10.) On January 10, 2018, Defendant removed the action to federal court. (*See* Notice of Removal, Dkt. 1, ¶ 9). During a hearing in state court on March 14, 2018, Plaintiff represented to the Honorable Carl J. Landicino of the

Supreme Court of New York, Kings County, that her case had not been removed (Def.'s 56.1, ¶¶ 57–58; Transcript of Mar. 14, 2018 Hearing, Dkt. 53-17, at ECF 762),[12] even though she had, in fact, received notice of the removal by first-class mail (Def.'s 56.1, ¶¶ 53–55).[13] Also on March 14, 2018, Plaintiff filed in state court an affidavit in opposition to removal. (*Id.* ¶ 60.) The March hearing was continued to April 18, 2018, because Plaintiff had not served her Order to Show Cause on Defendant or Carol Westfall. (*Id.* ¶ 59.)

A hearing subsequently took place on April 18, 2018. (*Id.* ¶ 61.) During that hearing, Plaintiff continued to insist that she had not been served in the federal action. (*Id.* ¶ 62; Transcript of Apr. 18, 2018 Hearing, Dkt. 53-18, at ECF 783–86.) During this time, discovery in the federal action had commenced and Plaintiff was being uncooperative with Defendant and the Court by refusing to timely comply with document requests. (Def.'s 56.1, ¶ 75; Deposition of Plaintiff, Dkt. 53-16, at ECF 701–03). By May 29, 2018, Defendant had served Plaintiff with copies of Defendant's files on the Decedent and "all official plan documents in Defendant's possession and control for the years 1983 through 2014." (Certificate of Service, Dkt. 17.)

---

[12] Until the March 18, 2018 hearing, Justice Landicino had not been made aware that the whole proceeding had been removed to federal court. (*Id.* at ECF 762.)

[13] Specifically, at the time Plaintiff told Justice Landicino that she had not received any notice that her case had been removed, Plaintiff had been served with the following documents via certified mail: (1) the notice of removal, (2) this Court's case assignment notification, (3) this Court's notice of availability of a magistrate, (4) the federal court clerk's docket check notice, (5) the state court notice of filing of notice of removal, (6) Defendant's answer, (7) a copy of the affidavit of service of Defendant's notice of filing of notice of removal, (8) Carol Westfall's letter motion for a pre-motion conference, (9) this Court's order directing Plaintiff to respond to Ms. Westfall's motion, (10) this Court's order granting Ms. Westfall's request for a pre-motion conference, (11) Defendant's letter to this Court correcting a typographical error, (12) this Court's minute entry for the pre-motion conference, (13) defense counsel's notice of change of address, (14) defense counsel's notice of appearance, and (15) the Honorable Lois Bloom's scheduling order. (*Id.* ¶ 58.)

After discovery concluded, Plaintiff filed sundry submissions in this Court insisting that discovery should be extended. For example, on October 19, 2018, Plaintiff moved to extend the discovery deadline because Defendant had not produced documents that she requested. (Def.'s 56.1, ¶ 66.) After Defendant responded that it had, in fact, produced all existing responsive documents, Judge Bloom denied Plaintiff's motion on November 1, 2018. (Def.'s 56.1, ¶ 67.) In doing so, Judge Bloom summarized:

> Plaintiff writes to request an extension of time to complete discovery. (ECF No. 34.) Defendant's counsel reports that all responsive pleadings to [P]laintiff's discovery requests have been produced. (ECF No. 36.) Defense counsel further reports that to the extent that documents have not been produced, such documents do not exist.
>
> A party seeking an extension of a scheduling order must demonstrate diligence and good cause. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326 339–40 (2d Cir. 2000); Fed. R. Civ. P. 16(b)(4) ("[a] schedule may be modified only for good cause and with the judge's consent[]").
>
> Discovery in this case closed on October 22, 2018. Defendant's counsel responded to [P]laintiff's demands on August 15, 2018, September 5, 2018, and October 19, 2018. (ECF No. 36.) Plaintiff may not be satisfied with discovery responses; however, that is not sufficient to demonstrate good cause to extend the discovery deadline. Defendant does not have an obligation to produce any further discovery.

(Dkt. 38.)

Notwithstanding Judge Bloom's order, Plaintiff filed a letter on October 30, 2018 in which she again asserted that Defendant had not produced documents Plaintiff had requested. (Def.'s 56.1, ¶ 68.) Defendant again answered that it had, in fact, produced all existing documents. (*Id.* ¶ 69.) On November 6, 2018, Plaintiff filed another motion to extend discovery and subpoena documents from Defendant. (*Id.* ¶ 70.) Defendant again answered that it had produced all existing documents. (*Id.* ¶ 71.) By order dated November 16, 2018, Judge Bloom again denied Plaintiff's request to reopen discovery and subpoena documents, and directed Defendant to resend Plaintiff's deposition transcript to her, as Plaintiff claimed to have not received it. (*Id.* ¶ 72; Dkt. 49.)

B.  Analysis

A party seeking attorneys' fees in an ERISA action must show "some degree of success on the merits" before a court may award attorneys' fees. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). Having granted summary judgment in Defendant's favor, *supra*, the Court notes that Defendant has met this standard. Though Defendant is eligible to seek attorneys' fees, Defendant is not categorically entitled to recover such fees. The relevant provision of ERISA grants the Court discretion in determining whether to allow reasonable attorneys' fees. *See* 29 U.S.C. § 1132(g)(1) ("In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney[s'] fee and costs of action to either party.").

Defendant argues that it is entitled to attorneys' fees under the five factors set forth in *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871–73 (2d Cir. 1987), *abrogated by Hardt*, 560 U.S. at 255. (Def.'s Br., Dkt. 51, ECF 271–73.) In *Chambless*, the Second Circuit announced five factors that a court is to consider in deciding whether to grant an award of reasonable attorneys' fees under ERISA's fee-shifting provision: (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of plan participants. 815 F.2d at 871. In *Hardt*, the Supreme Court observed that the five *Chambless* factors "bear no obvious relation to § 1132(g)(1)'s text or to [the Supreme Court's] fee-shifting jurisprudence" and "are not required for channeling a court's discretion when awarding fees" under § 1132(g)(1). 560 U.S. at 255. The Supreme Court did note, however, that "a court *may* consider the five [*Chambless*] factors . . . in

deciding whether to award attorney[s'] fees." *Id.* at 255 n.8 (emphasis added). As the Second Circuit has summarized:

> After *Hardt*, whether a [party] has obtained some degree of success on the merits is the sole factor that a court *must* consider in exercising its discretion. Although a court *may*, without further inquiry, award attorneys' fees to a [party] who has had some degree of success on the merits, *Hardt* also made clear that courts retain discretion to consider five additional factors in deciding whether to award attorney[s'] fees.

*Donachie v. Liberty Life Assurance Co. of Boston*, 745 F.3d 41, 46 (2d Cir. 2014) (citations, quotations, and alterations omitted); *see also Scarangella v. Grp. Health, Inc.*, 731 F.3d 146, 152 (2d Cir. 2013) ("*Hardt* also permitted the use of the five-factor tests adopted by most Circuit[s] . . . to channel discretion in awarding reasonable fees to eligible parties, but held that courts were not required to use them.").

Applying this standard, the Court determines that Defendants are entitled to attorneys' fees, but only in the amount of $100. *See* 29 U.S.C. § 1132(g)(1); *Donachie*, 745 F.3d at 47–48 (affirming district court's discretion in awarding attorneys' fees in ERISA matter). While Defendant has demonstrated success on the merits and clearly established two of the five *Chambless* factors—*i.e.*, that the merits of Defendant's position was plainly superior to that of Plaintiff throughout the litigation (the fourth *Chambless* factor) and that the action commenced by Plaintiff conferred a *de minimis*, if any, common benefit on any group or plan participants (the fifth *Chambless* factor)—the Court is concerned about Plaintiff's ability to pay any attorneys' fee award (the second *Chambless* factor), given the nature of these proceedings and her *pro se* status. *See Cross v. Village of Cooperstown*, No. 04-CV-501 (FJS) (GHL), 2007 WL 3254269, at *5 (N.D.N.Y. Nov. 2, 2007) ("Although it is unjust to award attorney[s'] fees against a plaintiff proceeding *pro se in forma pauperis* where the plaintiff's dereliction is the result of circumstances

16

beyond his control, a court may assess fees against *pro se* plaintiffs who do not proceed *in forma pauperis* and who act willfully." (citations omitted)).[14]

In addition, the Court is not convinced that an award of attorneys' fees will have a general deterrent effect (the third *Chambliss* factor), since it seems unlikely that others who may be contemplating similar litigation would have any way or reason to know about this action or any attorneys' fee award. *Cf. Buffalo Anesthesia Assocs., P.C. v. Gang*, No. 05-CV-204 (KS), 2009 WL 3199584, at *2 (W.D.N.Y. Sept. 30, 2009) ("[T]he Court is sensitive to [third-party plaintiff's] disability and []professed lack of financial means and aware of the likely disparity between the legal fees actually incurred . . . in defending this action and the penalty which would deter [third-party plaintiff]—and others—from such misconduct in the future.").

Lastly, the Court also is not convinced that, despite acting in plain disregard for procedural realities, Plaintiff, who is *pro se*, acted with subjective bad faith—as opposed to acting out of desperation and ignorance of the law—during the relevant events in this case (the first *Chambless* factor). The Court intends that the award of $100 in attorneys' fees will serve to deter Plaintiff from ill-advisedly continuing or bringing future litigation of this nature, affirm Defendant's entitlement to attorneys' fees in situations such as this, and provide a measure of compensation for the fees expended by Defendant in this litigation. *See E. Sav. Bank, FSB v. Bowen*, No. 13-CV-6366 (ENV) (VMS), 2017 WL 9485705, at *1 (E.D.N.Y. Feb. 6, 2017) ("As the Court must award reasonable attorneys' fees and as Defendant [] is a *pro se* defendant, the Court has considered the fees and costs request and recommends that the amount awarded for attorneys' fees and costs be reduced from Plaintiff's proposed amount." (citation and footnote omitted)), *report and*

---

[14] The Court notes that, because Defendant removed this action to federal court, Plaintiff was not required to pay the filing fee, and there is no evidence in the record definitively establishing whether or not Plaintiff is of financial means.

*recommendation adopted as to attorneys' fees and costs*, 2017 WL 2375928 (E.D.N.Y. May 31, 2017).

Accordingly, the Court grants Defendant's request for attorneys' fees. but only in the amount of $100.

## CONCLUSION

For the reasons set forth above, the Court grants summary judgment to Defendant and dismisses this action. The Court additionally grants Defendant's request for an award of attorneys' fees against Plaintiff, but only in the amount of $100. The Clerk of Court is respectfully directed to enter judgment and close this case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum & Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 29, 2019
      Brooklyn, New York